# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:09cv517-RJC-DCK

| | |
|---|---|
| **I**LONA **A**YLWARD AND **V**ALENTINA **K**RASNOVA, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | )     **ORDER** |
| v. | )<br>) |
| **F**EDERAL **E**MERGENCY **M**ANAGEMENT **A**GENCY, | )<br>)<br>) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. No. 15) and its Memorandum in Support of that Motion (Doc. No. 16) and Amended Memorandum (Doc. No. 22); Plaintiffs' Memorandum in Opposition to Defendant's Motion (Doc. No. 23) and their supporting documentation (Doc. Nos. 24-28 and CD Exhibit on file in Clerk's Office); and Defendant's Reply (Doc. No. 29). For the following reasons, Defendant's Motion is GRANTED in part and DENIED in part.

## I. LEGAL STANDARD

Rule 12(d) of the Federal Rules of Civil Procedure provides, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." It is, moreover, "well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, allowing them to assess whether genuine issues of material fact do indeed exist." Bosiger v. US Airways, Inc., 510 F.3d 442, 450 (4th Cir. 2007) (recognizing a district court's discretionary power to convert a Rule 12(b)(6) motion into a Rule 56 motion). In

interpreting the requirements of this rule, the Fourth Circuit has held that a "party must be afforded a reasonable opportunity for discovery before a Rule 12(b)(6) motion may be converted and summary judgment granted." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (internal quotation marks omitted).

Here, the defendant moved to dismiss, or in the alternative, for summary judgment. The arguments of both parties focus on summary judgment. Both parties rely on matters outside the pleadings in briefing Defendant's motion; had ample opportunity for discovery - which went on for over 6-months prior to the filing of the motion at issue; and have also submitted extensive briefing in support and in opposition to this motion, including the presentation of facts relevant to the question of coverage under the flood policy. Thus, this Court will convert Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. No. 15) into one for summary judgment.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The

nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## II.     BACKGROUND

Prior to 2008, the Federal Emergency Management Agency (FEMA) issued Ilona Aylward and Valentina Krasnova (Plaintiffs) a flood insurance policy under the National Flood Insurance Program (NFIP) for their home at 1645 Scotland Avenue in Charlotte, North Carolina. Before setting forth the facts and procedural history relevant to this motion, it is necessary to provide some information about the NIFP to put it in context.

### 1.     FEMA's National Flood Insurance Program

In 1968, Congress established a federally-subsidized program, the NFIP, to make affordable flood insurance available to the general public at or below actuarial rates. See 42 U.S.C. §§ 4001 et seq. FEMA took control of the program in 1978, assuming all relevant operational responsibilities. See 15 U.S.C. § 2201 (reprinting 1978 Reorganization Plan No. 3). Accordingly, FEMA is authorized to promulgate regulations as to "the general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage," and as to "the general method or methods by which proved and approved claims for

3

losses under such policies may be adjusted and paid." See Battle v. Seibels Bruce Ins. Co., 288 F.3d at 596, 599 (4th Cir. 2002)(citing 42 U.S.C. §§ 4013, 4019). In other words, FEMA writes the policies and makes the rules as to claims made under those policies. Moffett v. Computer Sciences Corp., 457 F.Supp.2d 571, 573 (D.Md. 2006).

FEMA requires all policies issued under the NFIP to use the specific terms and conditions of coverage of the Standard Flood Insurance Policy (SFIP), codified in 44 C.F.R. Part 61, App. A(1). The SFIP limits coverage to "direct physical loss by or from flood"and contains a long list of losses that are not covered. It also enumerates several preconditions to collecting on a claim, including the filing of a proper "proof of loss" within 60 days of the flood loss. A proof of loss is "the [insured's] statement of the amount [he or she] is claiming under the policy, signed and sworn to by [the insured.]" 44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(4). A proof of loss must provide, *inter alia*, a brief explanation of how the loss occurred, detailed repair estimates, and an inventory of damaged property. Although policyholders may be provided with the services of an adjuster in completing their proofs of loss, the SFIP expressly declares that "this is a matter of courtesy only," and that the insured bears the ultimate responsibility for complying with the terms and conditions of the SFIP. Id. Payment on an SFIP claim constitutes a direct charge on the United States Treasury. 42 U.S.C. §§ 4017-18; Battle, 288 F.3d at 600.

It is undisputed that FEMA issued an SFIP to plaintiffs (No. RL00036051) that was in full force and effect on the dates of the two floods at issue in this litigation. Because this Court is reviewing a motion for summary judgment, the following facts are recited in the light most favorable to the plaintiffs or are undisputed. See Anderson, 477 U.S. at 255.

2. The First Flood

Briar Creek, which runs through the plaintiffs' neighborhood, overflowed on August 27,

2008 due to heavy rains from Tropical Storm Fay. The next day, Plaintiffs notified FEMA that their home had been damaged as a result of the flood, and FEMA assigned Jackson Adjustment Company (Jackson) to investigate. Jackson inspected the property on August 31, 2008 and determined that the flood waters had risen to 38 inches inside the first floor of the property and had remained for 1.5 days before receding. Jackson prepared a Proof of Loss (POL) that estimated the "full cost of repair or replacement" as $84,529.87[1]; however, the POL was later revised so that this amount was only $76,102.27. The difference of $8,427.60 was the result of Jackson deducting the cost of drywall above four feet and the cost of construction materials that were stored in the detached garage. Although the plaintiffs signed Jackson's first POL, they did not sign the second. Both POLs were included in Jackson's Flood Damage Closing Report, which was submitted to FEMA on November 4, 2008.

On December 4, 2008, Claims Examiner Derek Stone informed the plaintiffs by letter that they were entitled to reimbursement in the amount of $67,925.83. Stone agreed with Jackson's recommendation that the policy should not cover any damages above the four foot water line because these damages were not "direct physical loss" from the flood in light of the fact that the interior water line reached 38" and the water remained for 1.5 days. Moreover, Stone reduced the revised POL by another $7,451.40 to account for building items removed by the cleaning/restoration crew (Servpro) that allegedly were not damaged by flood water and for allowances to repair damage to the detached garage. Because the detached garage had areas used or held for residential purposes, the decision explained, it was excluded under the policy.

On January 13, 2009, the plaintiffs appealed Stone's decision, submitting another POL in

---

[1] It appears that this amount was then reduced by a $500 policy deductible.

the amount of $199,951.10 in the process. The plaintiff's based this amount on 1) the invoice from Servpro in the amount of $26,464.86 (which excludes $500.00 they already paid to Servpro), and 2) a repair estimate prepared by the Andrew Roby Company (a general contractor). The claim and the formal appeal were handled separately: FEMA reviewed the appeal, while NFIP reviewed the additional proof of loss.

On January 20, 2009, NFIP Claims Director Scott Holmes sent a letter to the plaintiffs, which dealt with the invoice from Servpro. Holmes explained that the bill from Servpro would not be paid in full because the policy did not cover some of the services that Servpro performed, such as removing or replacing the upper four feet of wall drywall or the ceiling drywall, working within the detached garage, and cleaning the driveway. This amounted to $13,392.18 worth of services that were not covered by the policy. However, in response to a phone call from Aylward on March 16, 2009, Holmes reevaluated Plaintiffs' claim and decided to include a $505.35 charge for work done on a stairwell in the garage that he had previously deemed ineligible under the policy. Ultimately, FEMA convinced Servpro to settle for $13,250.00 and to agree to release any other amounts and to take a dismissal with prejudice of the company's court action against Aylward.

On March 20, 2009, NFIP Claims Director Derek Stone sent a letter to the plaintiffs, which dealt with the estimate from the Andrew Roby Company. Stone informed the plaintiffs that the estimate included "both covered and non-covered damages" and thus rejected the second POL. But Stone authorized an additional payment of $14,430 (on top of the $66,107.62 that had already been paid on Plaintiffs' original, signed POL) to account for covered items that had previously been excluded but should not have been.

On the appeal side, FEMA Director of Claims James A. Sadler was responsible for

reviewing the plaintiffs' appeal of their denied flood claim. After informing Aylward that review was underway, Sadler sent her a letter on July 29, 2009 with the conclusions of his review. Specifically, he stated that FEMA concurred with 1) the decision to exclude the detached garage because it contained "accommodations suitable for residential purposes"; 2) the limitation for removal and replacement of the damaged drywall to four feet above the floor level, "in light of the maximum level of the flood waters"; and 3) the ultimate amount of Plaintiffs' covered claim (after the increases for errors made by the adjuster). Sadler also stated that "no further administrative review will be provided" and referred Plaintiffs to the section of their flood policy governing suits against FEMA.

3. The Second Flood

On May 5, 2009, Briar Creek overflowed for a second time. The next day, Plaintiffs notified FEMA of this loss, and FEMA again assigned the Jackson Adjusting Company to inspect the flood damage. FEMA also hired a forensic engineer to inspect the property. The engineer's written report, submitted on June 5, 2009, stated that the flood did not cause any structural damage. The plaintiffs signed a POL for the second flood on July 13, 2009, in which the full cost of repair or replacement was estimated to be $20,010.39.[2] FEMA approved the claims set forth in the POL and issued a check for the full amount claimed, minus a $500 deductible. Plaintiffs did not file a separate POL.

4. Procedural History

On December 2, 2009, Plaintiffs brought this timely action, alleging that FEMA breached

---

[2]This amount was then reduced by a $500 policy deductible and depreciation of $2,227.25; however, the plaintiffs' policy entitled them to recover depreciation, so that amount was later restored.

7

the terms of their policy by wrongfully refusing to pay the full amount due for covered losses. See Doc. No. 1 at 10: Complaint; Doc. No. 23 at 16: Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion. Following discovery, FEMA filed the instant Motion to Dismiss, or in the alternative, for Summary Judgment with respect to all claims against it. Doc. No. 15. FEMA argues that it is entitled to summary judgment because 1) the plaintiffs failed to comply with the express terms of the SFIP in submitting their claims and are therefore barred from bringing suit; and 2) several of the claims were excluded by the SFIP, settled, undetailed and unjustified, or otherwise paid in full. Doc. No. 22: Amended Memorandum of Law in Support of Defendant's Motion.

## III. DISCUSSION

### 1. ANALYSIS OF FIRST FLOOD

As described above, Plaintiffs signed the first POL that Jackson prepared but refused to sign the revised version; instead, Plaintiffs submitted their own, revised POL on January 13, 2009, which was rejected (although an additional $14,430 payment was authorized).

#### A) Whether Plaintiffs Failed to Provide Sufficient Detail and Failed to Cooperate with Investigation

With respect to the first flood loss, FEMA argues that the plaintiffs' claims are barred under the express terms of their policy because they failed to provided the required level of detail in their proofs of loss to permit additional payment beyond what was already paid to them, and they failed to cooperate with the agency's requests that more detail be provided to support their additional claims for reimbursement.

As previously outlined, compliance with the provisions of the SFIP is a condition

precedent to recovery under the policy. The SFIP requires claimants to submit "detailed repair estimates" and to "justify" the amount of loss submitted in their proof of loss. 44 C.F.R. Part 61, App. A(1), Art. VII(J)(4-5). Both parties submit that the standard this Court should follow in evaluating whether Plaintiff's provided sufficiently detailed and justified claims in its POL is articulated in <u>Sun Ray Village Owners Assoc. V. Old Dominion Ins. Co.</u>, 546 F. Supp.2d 1283 (N.D. Fl. 2008). In that case, the district court granted summary judgment for the insurer where the insured failed to provide *any* support for the loss claimed in its POL. In so holding, the court explained that the SFIP requires more than mere notice of the claim on the proof of loss form. "This does not mean insureds must submit every bill, receipt, and related document, however, unless requested to do so by the insurer ... Instead, an insured must submit enough support to allow the insurer to evaluate the merits of the claim." 546 F. Supp. 2d at 1291-92. Further, the court noted that the documentation of an insured's detailed repair estimates most commonly takes the form of contractors' repair estimates.

Unlike the plaintiffs in <u>Sun Ray</u>, the plaintiffs in this case did not fail to provide any support for their POL. To the contrary, they included their contractor's repair estimates, which is exactly what the <u>Sun Ray</u> court recognized as the most common form of support. Viewing the facts in the light most favorable to the plaintiff, FEMA is not entitled to summary judgment on account of the plaintiffs' POL lacking detail.

However, the SFIP also envisions that FEMA will need to further investigate a claim after receiving a sufficient proof of loss. It requires policyholders to "cooperate with the adjuster or representative in the investigation of the claim," 44 C.F.R. Part 61, App. A(1), Art. VII(J)(6). It goes on to inform policyholders that FEMA may request, in writing, a complete inventory of the damaged property, including "quantities and costs," "actual cash values or replacement cost,"

9

and "amounts of loss claimed." Id. at Art.VII(K)(2). This allows FEMA to verify the detailed repair estimates previously submitted with the proof of loss.

Here, Claims Examiner Stone requested additional information from the plaintiffs in his March 20, 2009 letter. Doc. No. 17-19. For example, he stated that:

> we need to know the individual unit prices that the contractor is proposing;
>
> please review the following, and let us know if your contractor can provide additional information to assist us with review of your claim;
>
> As we've tried to outline for you, we do not have enough information on much of your contractor's pricing and estimate for us to determine if we might owe additional claim payment to you; and
>
> Please send us paid receipts and/or invoices for materials if you feel that the prices on materials are insufficient to make like-kind and quantity repairs.

Id. Although the plaintiffs submitted numerous documents during the course of this investigation, they never responded to these specific requests for information from Stone before filing this lawsuit.

In defense of their failure to respond, Plaintiffs argue that Stone's letter was not really a request for further information; rather, it was a rejection of their proof of loss because Stone did not budge from the rationale that the flood policy would not pay for any damages to the upper four feet of wall drywall/insulation or for the ceiling drywall/insulation. Doc. No. 23 at 21-22. This argument misses the mark. The issue is not whether the letter included a request but rather whether the requests constituted an investigation of the Plaintiffs' claim by a FEMA adjuster or representative with which they were required to cooperate under the policy, i.e. whether FEMA

had determined plaintiffs were not entitled to compensation. If the requests were made before the decision on entitlement had been reached, then the plaintiffs were required to cooperate to allow FEMA to make an informed determination If FEMA had already resolved the question as to the Plaintiffs' claim, then their requests for information could be construed as attempts to clarify exactly what the Plaintiffs were seeking, or possibly post hoc justifications for denial of a claim, but they are not "investigations" that require the Plaintiffs cooperation. Here, there is a genuine issue of material fact as to whether the investigation was still ongoing such that plaintiffs were required to specifically respond to Stone's March 20, 2009 letter.

On July 29, 2009, NFIP Director of Claims James Sadler, who was reviewing the plaintiffs' appeal, told them that FEMA did "not recommend further adjustment of your claim, and no further administrative review will be provided." Doc. No. 17-25 at 1. Sadler then referred the plaintiffs to the policy's provision on filing a lawsuit. In the light most favorable to the plaintiffs, they could have understood this letters as a final denial of their entire claim that relieved them of any duty to cooperate with the investigation. Summary judgment on the grounds that Plaintiffs failed to cooperate with FEMA's investigation is denied.

Because FEMA cannot establish as a matter of law that Plaintiffs are forbidden from bringing suit, evaluating the cost of damage from the 2008 flood loss presents a genuine issue of material fact (but for excluded items, discussed below). Generally there exists an issue of material fact as to whether the flood caused any damage above the waterline; specifically, this also includes claims for structural repairs and floor leveling, painting, interior finishing, exterior stucco, electrical work, electrical fixtures, and plumbing work.

### B) Whether Certain Claims are Excluded by the Policy

FEMA argues that three of the claims in Plaintiffs' January 13, 2009 POL are expressly

excluded by the policy, as Stone found in his March 20, 2009 letter.

## I. Detached Garage

First, FEMA asserts that the $6,429.50 claimed for garage repairs are excluded by the SFIP. See Doc. No. 17-7 at 12-13. The policy excludes detached garages "used or held for use for residential (i.e., dwelling)... purposes." 44 C.F.R. Part 61, App. A(1), Art. III(A)(3). Plaintiffs' garage is a detached unit with a one bedroom apartment on the second floor that includes a bedroom, kitchen, and bathroom. Doc. No. 17-15 at 1, 31-35: Flood Damage Closing Report. Nevertheless, Plaintiffs submit that they did not use the detached garage for residential purposes but only used it for the conventional purposes of storing some construction materials and their car. Doc. No. 1 at 10: Complaint. Defendants, for their part, have submitted property record cards for Plaintiffs' home, which establish that the Charlotte-Mecklenburg Tax Assessor's Office classified Plaintiffs' detached garage as a residential structure in the years 2008-2010.

Although the plaintiffs have established (for summary judgment purposes) that their detached garage was not currently being "used" for residential purposes, the question remains whether it was "held for use" for residential purposes. The SFIP does not define the phrase "held for use." However, the word "hold" has been interpreted to mean "possession or ownership." *Webster's Ninth New Collegiate Dictionary* 575 (1990). The phrase "held for use," is construed as meaning, with regard to a detached garage, that a policyholder who possesses or owns a detached garage for residential purposes must obtain additional insurance coverage because his/her garage would not be covered under the SFIP.

In the instant case, there is a genuine issue of material fact surrounding the purpose for which Plaintiffs held their detached garage. A detached garage with a bedroom, kitchen, and

12

bathroom appears to be held for residential purposes; yet Plaintiffs assert that they never used it as a living area, and in fact, that the water and sewage were never even connected to the city lines. Doc. No. 25 at 6: Affidavit of Ilona Aylward. In the light most favorable to the plaintiff, this presents an issue of material fact rendering summary judgment inappropriate.

### ii. Exterior Patio Repairs

Second, FEMA argues that the $8,572 for exterior finishing in connection with Plaintiffs' patio is excluded by the policy. As Claims Examiner Stone noted in his March 20, 2009 letter to the plaintiffs, the flood policy excludes areas "located outside the perimeter, exterior walls of the insured building" whether protected by a roof or not. 44 C.F.R. Pt. 61, App. A(1), Art. IV(9). The plaintiffs do not dispute that their patio was outside the perimeter, exterior walls of the residence; thus, there is no genuine issue of material fact, and FEMA is entitled to summary judgment on this claim.

### iii. Demolition and Framing

Third, FEMA argues that Plaintiffs' $3,800 for demolition and $7,820.54 for framing are excluded under the policy because these expenses were not directly caused by the flood. Doc. No. 17-19 at 1-2. However, a reasonable jury could find that the adjuster's estimate did not correctly evaluate the extent of damage and that these damages were caused by the flood. FEMA issued guidance to Independent Adjusting Firms that damage from water, moisture, mildew, or mold damage in connection with a flood will be covered (unless there is clear evidence of the policyholder's failure to inspect and maintain the insured property), and that "if such damage is the result of wicking, it is covered." Doc. No. 28. FEMA is not entitled to summary judgement on these claims.

13

### C) Settled Claims

Finally, FEMA argues that any remaining portion of the Servpro bill, which was released by Servpro in their settlement with the plaintiffs, should not be part of any claim in this matter. Plaintiffs offer no rebuttal. Even in the light most favorable to the plaintiffs, Servpro is not entitled to any additional payments, having agreed to release any amount above $13,250.00 and take a dismissal with prejudice of its action against Aylward. FEMA is therefore entitled to summary judgment in this respect.

#### 2. ANALYSIS OF SECOND FLOOD

Plaintiffs claim that the 2009 POL and FEMA's corresponding pay-out for the second flood loss was unfairly lowered by "deductions" for "previously paid" items. See Doc. No. 1 at ¶¶ 39-42: Complaint. FEMA responds that it is entitled to summary judgment on any claim related to the 2009 flood because plaintiffs were fully paid for what they submitted in their POL for that flood, and their failure to submit a POL for any additional benefits claimed in this lawsuit precludes further recovery. See Doc. No. 22 at 19: Defendant's Amended Memorandum in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment. It is undisputed that the plaintiffs were fully compensated for the amount claimed in their signed POL for the second flood loss, and that they never filed a second POL.

The Fourth Circuit demands strict compliance with the terms and conditions of the SFIP. See Dawkins v. Witt, 318 F. 3d 606 (granting summary judgment for FEMA where claimants failed to comply with the 60-day limit for filing a POL, even though compliance was "extremely difficult," reasoning that the policy "specifically requires a claimant to file a proof of loss within 60 days to receive coverage regardless of the circumstances of the claim"). Under the plain and unconditional language of the SFIP, claimants are directed to file a POL – the "statement of the

amount you are claiming under the policy" – within 60 days.  See 44 C.F.R. Part 61, App.A(1), Art. VII.J.4; see also, Howell v. State Farm Ins. Co., 540 F. Supp. 2d 621, 627 (D. Md. 2008) (holding that the SFIP "clearly envisions that policyholders will be bound by the amounts they claim in timely proofs of loss).  Furthermore, the SFIP declares in no uncertain terms that the policyholder is solely responsible for filing a POL.  See id. at Art. VII J.7.  In sum, the SFIP requires claimants to provide a timely POL in order to sue for benefits.  This responsibility rests at all times with the policyholder.  By failing to submit a second POL for any additional amounts above what they were already compensated for, the plaintiffs failed to comply with the terms of the SFIP as a matter of law, and FEMA is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED THAT:**

Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as explained herein.

Signed: February 21, 2011

Robert J. Conrad, Jr.
Chief United States District Judge